UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BETTY J. GHORLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:13-CV-400-HSM-SKL |
| v. ) | |
| ) | |
| THOMAS AND BETTS CORPORATION ) | |
| PENSION PLAN FOR BARGAINING UNIT ) | |
| EMPLOYEES, PART C, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Betty J. Ghorley ("Plaintiff") brought this action against Defendant Thomas and Betts Corporation Pension Plan for Bargaining Unit Employees, Part C ("Defendant" or "the Plan") under her late husband's pension Plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B); 29 U.S.C. § 1132 (a)(1)(B) [Doc. 19]. The Defendant filed a motion for judgment on the administrative record [Doc. 30], which was referred for a report and recommendation under the Court's standard referral and scheduling order [Doc. 6]. Plaintiff filed a response opposing the motion [Doc. 32],[1] Defendant filed a reply [Doc. 33], and this matter is now ripe. For the reasons stated below, I **RECOMMEND** that Defendant's motion for judgment on the administrative record [Doc. 30] be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE**.

---

[1] Plaintiff's responsive brief is misnamed as being a response to a motion for judgment on the *pleadings*. While Defendant previously filed a motion for judgment on the pleadings [Doc. 2], that motion was withdrawn [Doc. 14], and it is clear that Plaintiff's misnamed brief was filed in response to the currently pending motion for judgment on the administrative record.

## I.  INTRODUCTION

The overarching issue in this ERISA case is whether the Plan's determination of the benefit payable to the widow of a Plan participant is arbitrary and capricious. Plaintiff is the widow of Steven A. Ghorley ("Mr. Ghorley"), a participant in the Plan until his death on October 1, 2012. Plaintiff contends that by late September of 2012, Mr. Ghorley (or Plaintiff on his behalf) had done everything necessary to elect a 100% joint and survivor annuity benefit payable to her as the beneficiary. It seems clear that Plaintiff, her late husband who was battling kidney cancer, and his long-time employer ("T&B") all wanted Plaintiff to receive 100% (not 50%) of Mr. Ghorley's pension benefit. The Plan, however, contends that Mr. Ghorley unfortunately passed away too soon for Plaintiff to be able to receive that higher 100% benefit under the terms of the Plan.

As a result, after Mr. Ghorley's death, Plaintiff was informed for the first time that she was entitled to only a surviving spouse pension benefit payable as a 50% joint and survivor annuity under the provisions of the Plan--not the 100% annuity. Plaintiff's contends that because she and Mr. Ghorley complied, or substantially complied, with all steps necessary to change Mr. Ghorley's pension benefit election to the 100% joint and survivor annuity under the Plan, she is entitled to discovery to prove her position.

## II.  ADMINISTRATIVE RECORD

Mr. Ghorley was a long term employee of T&B and a participant in the Plan [Doc. 16-1 at Page ID # 190]. Prior to Mr. Ghorley's death, Plaintiff and Mr. Ghorley "inquire[d] as to various scenarios with respect to initiation of Mr. Ghorley's disability pension and the survivor benefit to which Mrs. Ghorley would be entitled." [*Id*. at Page ID # 190]. They specifically wanted to ensure that Plaintiff would receive "100% of Mr. Ghorley's pension instead of the 50% joint and survivor

2

which is the automatic form of benefit." [*Id*. at Page ID # 190; *see also* Page ID # 192].

According to Plaintiff's amended and restated complaint, Mr. Ghorley sought to apply for a pension benefit in May 2012, and was told by T&B,

> that he could not begin a disability pension until his employment terminated when his medical leave ended. The disability pension would commence on November 1, 2012 with the first check to be received on December 1, 2012. . . . .

[Doc. 19, Page ID # 431, ¶ 15]. Mr. Ghorley began his medical leave on May 21, 2012, remained at home until he was hospitalized on September 24, 2012, and died seven days later on October 1, 2012 [*id*. at Page ID # 430, ¶ 14], a month before his disability pension could commence. On September 28, 2012, a few days prior to his death, Plaintiff, exercising Mr. Ghorley's power-of-attorney, informed the Plan that Mr. Ghorley intended to begin his disability pension on December 1, 2012, and that he desired it to be paid as a 100% joint and survivor annuity [Doc. 16-1, Page ID #190]. Before Mr. Ghorley's disability pension benefit ever began, however, he passed away [*id*. at Page ID # 190, 204].

A qualified joint and survivor annuity for a married participant like Mr. Ghorley is a benefit under the joint pensioner option described in Section 6.4(a) of the Plan, with his spouse as the joint pensioner. The survivor annuity is 50% of the amount payable during the joint lives of the participant and his spouse; or alternatively, the participant may elect during the election period described in Section 6.2(d) of the Plan that the survivor annuity shall be 66-2/3% or 100% of the amount of the annuity payable during their joint lives [Doc. 16-2 at Page ID # 334]. Section 6.2(d) provides that a benefit election must be made in writing not more than 180 days before the annuity starting date [Doc. 16-2 at Page ID # 336]. It is undisputed that Mr. Ghorley died prior to the 180-day window, because the earliest possible annuity starting date was December 1, 2016, making the

3

earliest possible election date in June of 2016.

The Plan contains the following provisions regarding the benefit payable to a surviving spouse of a participant whose employment ends due to death:

> § 5.6 Surviving Spouse Pensions
>
> (a) Amount. The Surviving Spouse Pension under Section 4.7 shall be such monthly pension (if any) for the rest of the lifetime of the surviving Spouse of a deceased Participant as the Spouse would have been entitled to receive . . . if:
> . . . .
>
> (2) In the case of a Participant who dies on or before his earliest retirement date:
>
> (A) The Participant's employment with the Employers and Affiliates had terminated on the date of his death or his actual date of separation, if earlier;
>
> (B) The Participant had survived to his earliest retirement date;
>
> (C) The Participant had retired with a pension payable immediately under the 50% Joint Pensioner Option (described in Section 6.4(a)) (or such other Joint Pensioner Option as actually elected by the Participant under Section 6.2(a)) with his Spouse as the Joint Pensioner; and
>
> (D) The Participant died on the day after the day on which he would have attained his earliest retirement date.

4

[Doc. 16-2 at Page ID # 330-31].[2]  Addressing the surviving spouse pension, the Summary Plan Description ("SPD") states:

**IF YOU DIE BEFORE PAYMENT BEGINS**

> *18.  If I die before my pension payments begin, will a death benefit be paid under the Pension Plan?*
>
> If you die before your pension payments begin, a death benefit will be paid on your behalf *only* if:
>
> •   You are married on the date of your death; and
>
> •   You have earned a vested right to your pension benefit.
>
> *19.  What death benefit will be payable to my surviving spouse?*
> . . . .
> The monthly payment will be equal to the monthly payment your surviving spouse would have received under the 50% qualified joint & survivor form of payment, based on the years of benefit service you had earned before your death . . . .

[Doc. 16-2 at Page ID # 401].

In a statement dated November 6, 2012, Plaintiff was notified of Defendant's determination that she was entitled to receive the 50% joint and survivor annuity payment under the surviving spouse pension provisions of the Plan [Doc. 16-1 at Page ID # 190, 208]. On November 16, 2012, Plaintiff sent a letter advising the Plan administrator that she intended to appeal the denial of her claim for a 100% joint and survivor annuity payment under the permanent disability pension

---

[2] Section 4.7 of the Plan provides: "<u>Surviving Spouse Pension:</u> A surviving Spouse Pension shall be paid to the surviving Spouse (if any) of a Participant who is vested in his Accrued Benefit, . . ., and who dies before his Annuity Starting Date. The amount of the Surviving Spouse Pension and the commencement date of such Pension shall be determined under Section 5.6.

provisions of the Plan [*id*. at Page ID # 209].  Because it was Plaintiff's first communication with the Plan administrator (as opposed to communicating with T&B), her letter was treated as an initial claim for benefits [*id*. at Page ID # 212].

On December 12, 2012, the Plan administrator sent a letter to Plaintiff denying her claim for a disability pension benefit, stating Mr. Ghorley was not eligible to receive a disability pension because he was still receiving, and had not exhausted, his short term disability at the time of his death, and, thus, his employment was terminated due to his death, not due to a disability [*id*. at Page ID # 216].  The Plan explains eligibility for the disability pension as follows:

> § 4.6   Disability Retirement:
>
> (a)   Eligibility: A Participant having at least 15 Years of Vesting Service whose employment with the Employers and Affiliates is terminated on or after the date he attains Age 50 and before Age 65 by the Employers and Affiliates because of his being Permanently and Totally Disabled shall be eligible for a Disability Pension . . . .
>
> . . . .
>
> (d)   Commencement and Duration: A Participant's Disability Pension shall not begin until the first day of the month after his employment . . . shall have terminated . . . .  No Disability Pension shall be payable for any month or months with respect to which a Participant is in receipt of temporary disability benefits under any group sickness and accident insurance plan to which his former Employer contributes.

[Doc. 16-2 at Page ID # 326-27].  The SPD explains:

> **IF YOU BECOME DISABLED**
>
> *21.   What happens if I become disabled?*
> . . . .
> Your disability pension will not begin until the Committee receives evidence of your disability, and any temporary disability benefits under any group sickness and accident policy funded by Thomas & Betts have been exhausted.

6

[Doc. 16-2 at Page ID # 402-03].

On February 10, 2013, Plaintiff gave notice that she was appealing the Plan's determination that she was entitled to receive only the 50% joint and survivor annuity payment under the surviving spouse pension provisions [Doc. 16-1 at Page ID # 241]. After consideration pursuant to the appeals and review process established by the Plan, the determination was affirmed on March 11, 2013 [*id*. at Page ID # 240]. At Plaintiff's request, on April 8, 2013, the Plan administrator granted Plaintiff an extension until June 10, 2013, to provide additional information in support of her claim for additional benefits [*id*. at Page ID # 240, 242]. On May 7, 2013, counsel for Plaintiff submitted a letter, which requested that Plaintiff's claim be treated as one for a surviving spouse pension benefit in addition to the Plaintiff's prior claim for a disability pension benefit [*id*. at Page ID # 252-53].³ On June 5, 2013, the Plan administrator sent a letter to counsel for Plaintiff denying the May 7, 2013 claim and explaining that any benefits election under the Plan must be made in writing "not more than 180 days before the annuity start date" [*id*. at Page ID # 259, 262-63], which in this case would be 180 days before December 1, 2016 or December 1, 2021 [*id*. at Page ID # 190, 208]. The June 5th letter further stated that no written benefit election was ever made on Mr. Ghorley's behalf, and that "[e]ven if a written benefit election had been made related to the disability pension benefit, a written election related to that benefit would not be effective for the Surviving Spouse Pension to which Mrs. Ghorley is eligible pursuant to § 5.6(a)(2) of the Plan." [*Id*. at Page ID # 259, 262-65].

---

³ On May 13, 2013, counsel for Plaintiff faxed to the Plan a "Pension/Cobra Estimate" for Mr. Ghorley prepared August 15, 2012 by T&B, which states "If you die before you are eligible to begin receiving your benefits, your surviving spouse will receive 50% of what you are eligible to receive at the time you would have been eligible to receive those benefits." [Doc. 16-1 at Page ID # 255-56].

7

On June 14, 2013, counsel for Plaintiff sent a letter to the Plan administrator requesting, among other things, a review of the denial of her 100% joint and survivor annuity benefit claim [*id*. at Page ID # 270]. The denial of Plaintiff's claim was affirmed on August 22, 2013 [*id*. at Page ID # 246]. On September 3, 2013, the retirement plans committee affirmed its previous denial decisions after reviewing additional documentation [*id*. at Page ID # 297]. The additional documents reviewed apparently were the pension election confirmation statement and pension election authorization form sent to Mr. Ghorley on September 29, 2012, regarding his disability pension election [*id*. at Page ID # 301-08].

## III. ANALYSIS

While Defendant disputes there was actual or substantial compliance with all steps necessary to change the available benefit, the compliance issue appears to be irrelevant because there was nothing either Mr. Ghorley or Plaintiff could do during Mr. Ghorley's illness that could have changed the 50% pension benefit Plaintiff is scheduled to receive beginning on either December 1, 2016 (the early retirement option based on the date of Mr. Ghorley's 60th birthday if he were alive) or December 1, 2021 (the normal retirement option based on the date of Mr. Ghorley's 65th birthday if he were alive) to the 100% benefit she seeks. While Plaintiff's situation evokes great sympathy, under the clear terms of the Plan, I **FIND** the Plan's benefit determination is not arbitrary and capricious and, unfortunately, Plaintiff is simply not entitled to the 100% annuity benefit she seeks.

### A. Standard of Review

Plaintiff did not dispute Defendant's argument that this matter is subject to an arbitrary-and-capricious standard of review as the Plan gives Defendant discretion to determine eligibility for

8

benefits[4] [Doc. 31 at Page ID # 522]. Given the lack of objection by Plaintiff and the clear language of the Plan, I **FIND** the arbitrary-and-capricious standard of review is applicable to Plaintiff's claim for benefits under ERISA. Under this standard, a court must "defer to the underlying decision so long as it is rational in light of the plan's provisions." *Frazier v. Life Ins. Co. of North America*, 725 F.3d 560, 567 (6th Cir. 2013). If it is possible to offer a "reasoned explanation" for the decision, based on all the evidence known to the plan administrator, then the decision is not arbitrary and capricious. *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 710 (6th Cir. 2000) (quoting *Davis v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).

This standard is not demanding, but neither is it toothless. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169, 172 (6th Cir. 2003). Courts must scrutinize the decision to determine whether, "substantively or procedurally, [the plan administrator] has abused his discretion." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). In other words, the administrator's decision will be upheld only "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006). "In keeping with Sixth Circuit precedent," the court's role in reviewing an ERISA benefit determination is generally limited to a consideration of the "evidence that was actually presented to the administrator and included in the administrative record." *Edens v. Central Benefits Nat'l Life*

---

[4] The Plan provides: "§ 10.7 Discretionary Authority: The Committee, and The Plan Administrator, to the extent provided in Section 10.6 and to the extent any other duties are delegated to him pursuant to Section 10.4(a), shall have sole discretion to carry out their responsibilities under this Article X to construe and interpret the provisions of the Plan and to determine all questions concerning benefit entitlements, including the power to construe and determine disputed or doubtful terms. To the maximum extent permissible under law, the Committee's (and Plan Administrator's) determinations on all such matters shall be final and binding upon all persons involved." [Doc. 16-2 at Page ID # 361].

9

*Ins. Co.*, 900 F. Supp. 928, 931 (W.D. Tenn. 1995) (citing *Crews v. Central States*, 788 F.2d 332, 336 (6th Cir. 1986); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990)).

    **B.    The Plan's Decision**

Much of Plaintiff's argument has been focused on Mr. Ghorley's election, or attempted election, of a 100% joint and survivor annuity.[5] For purposes of the pending motion, however, I **CONCLUDE** it can be assumed, without deciding, that Mr. Ghorley effectively (i.e., via substantial compliance) changed his permanent disability pension election to the 100% joint and survivor annuity. Defendant argues that even assuming Mr. Ghorley effectively made the 100% joint and survivor annuity election, it would have no impact on the validity of Plaintiff's claim because Mr. Ghorley died before he (and therefore before Plaintiff) became eligible for the 100% joint and survivor annuity benefit under the Plan's clear and unambiguous terms [*see e.g.*, Doc. 31 at Page ID # 515].[6] Defendant contends the decision to deny benefits under the disability pension was not arbitrary and capricious, and Plaintiff is only entitled to a surviving spouse death benefit payable as a 50% joint and survivor annuity regardless of whether the election was actually or effectively changed.

After exhaustively arguing the issue of substantial compliance, Plaintiff pays little attention

---

[5] Plaintiff's (misnamed) response quotes extensively from her amended and restated complaint [Doc. 19] regarding actions by her, Mr. Ghorley, and T&B to actually or effectively elect the 100% annuity benefit. A vast majority of the response is devoted to issues of substantial compliance and Plaintiff's contention that substantial compliance cannot be determined without discovery outside the administrative record [Doc. 32 at Page ID # 549].

[6] Defendant further argues any asserted state law claims of mistake, waiver, and deception are preempted by ERISA and, in any event, Plaintiff is receiving the only benefit to which she is lawfully entitled. Plaintiff represents she is not asserting state law claims; rather, such doctrines may "more properly" be considered on "the only issue before the Court, the amount of the benefit to which the Plaintiff is entitled."

10

to Defendant's argument that even assuming substantial compliance, the Plan's benefit decision is correct because Mr. Ghorley died before he (and therefore Plaintiff) became eligible for the 100% joint and survivor annuity benefit. Plaintiff does, however focus on and add emphasis to the language of Section 5.6(a) as follows: "The Surviving Spouse Pension under Section 4.7 shall be such monthly pension (if any) for the rest of the lifetime of the surviving Spouse of a deceased Participant as the Spouse would have been entitled to receive . . . if: . . . (2) In the case of a Participant who dies on or before his earliest retirement date: . . . The Participant had retired with a pension payable under the 50% Joint Pensioner Option (described in Section 6.4 (a) ***(or such other Joint Pensioner Option as actually elected under Section 6.2(a)***)) with his spouse as the Joint Pensioner . . . ." [Doc. 32 at Page ID # 549]. Plaintiff then argues:

> The emphasized language brings us back to where we started. Did Ghorley "actually elect" another form of benefit by "substantially complying" with the terms of the Plan? That issue cannot be resolved from a review of the administrative record alone. Under Section 6.2(a)(2), he could have elected a 100% survivor annuity for his wife, which would have been infinitely preferable to a 50% survivor annuity that was the automatic but not unchangeable form of joint and survivor annuity. Other facts mentioned in the administrative record, but not in a fully conclusive way, must be examined. The plan may give its administrators authority to interpret it but not to ignore parts of it like Section 5.6(a) because they refuse to seek legal advice what is an "actual election." The administrative record leads one to assume that no one ever consulted counsel about what this crucial term and "substantial compliance" mean in this situation.

[Doc. 32 at Page ID # 549-50].

Finally, in the concluding paragraph of her brief, Plaintiff argues,

> What seems to have happened is that the administrators somehow thought that a layman like Ghorley would expect or understand (without their telling him) that there is a difference between the forms to be completed so that his spouse could receive his disability benefit

11

> and or his retirement benefit. One can also conclude that the
> administrators never actually understood that he was doing
> everything he could to cause his wife to receive any and all benefits
> after his death. They apparently just gave him information about his
> disability benefit; what he seemingly wanted was elections he could
> make about changing both benefits. That could be an honest mistake
> or it could be more blameworthy. Either way, the Plaintiff should not
> be punished because of the conduct of the Defendant.

[Doc. 32 at Page ID # 550].

Plaintiff's emphasis on a portion of the language of Section 5.6(a) and the ensuing argument quoted above ignore Section 6.2(a) and (d) which provide limitations about when an election to increase the survivor annuity could be made. Under the Plan provisions, Mr. Ghorley could not change his retirement benefit election unless he was within 180 days of the annuity starting date. Plaintiff acknowledges in her amended and restated complaint that the pension benefit she is seeking could not commence until December 1, 2016 or December 1, 2021 [Doc. 19 at Page ID # 429, ¶ 6]. Thus, Mr. Ghorley was not within the 180-day election period, which would have occurred in June 2016 at the earliest [Doc. 16-1 at Page ID # 262 ((d) "Election Period: A Participant's written election . . . must be made not more than 180 days . . . before his Annuity Starting Date.")]. These Plan provisions could not be orally modified, even by express representations of Mr. Ghorley's employer, if any. *See e.g.*, *Sprague v. GMC*, 133 F.3d 388, 402-03 (6th Cir. 1998) (citations and internal quotation marks omitted) (holding the Sixth Circuit "has consistently refused to recognize oral modifications to written plan documents . . . and the ERISA plan "may not be modified or superseded by oral undertakings on the part of the employer.").

Thus, any election decisions made during the period prior to Mr. Ghorley's death related to his disability pension benefits because Mr. Ghorley was not in the applicable 180-day period to make adjustments to the elections for any other form of pension benefit. Unfortunately, Plaintiff is

12

not entitled to any form of disability pension because Mr. Ghorley's employment ended due to death, not disability, under the clear terms of the Plan and SPD. After reviewing the entire record, I **CONCLUDE** that Defendant's decision that Plaintiff is entitled to only the surviving spouse pension benefit payable as a 50% joint and survivor annuity is the result of a deliberate reasoning process supported by substantial evidence and is a rational decision in light of the provisions of the Plan. Thus, the decision was not arbitrary and capricious and must be affirmed.

## IV. CONCLUSION

Having carefully reviewed the administrative record and the pleadings, I **RECOMMEND**[7] that Defendant's motion for judgment on the administrative record [Doc. 30] be **GRANTED** and this action be **DISMISSED WITH PREJUDICE**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).